## Norfolk

CARL SEBASTIAN PARRISH

v.

COMMONWEALTH OF VIRGINIA

No. 0329-92-1

Decided November 23, 1993

COUNSEL

S. DeLacy Stith, for appellant.

Jerry P. Slonaker, Senior Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**MOON, C.J.**—Carl Sebastian Parrish contends that the evidence of his two thumb prints and his palm print being on the deposit slip of a stolen bank bag was insufficient evidence to sustain his conviction of a robbery. We disagree and affirm his conviction. We hold that, under the circumstances of the case, the evidence excluded any reasonable hypothesis that Parrish's prints found their way onto the deposit slip without Parrish having been the robber.

Shortly after 4:00 p.m. on September 16, 1991, the general manager of a Hardee's restaurant in Portsmouth, Brant Skidmore, was robbed as he was walking to his car with the day's bank deposit. He carried $1,245 in cash locked in a bank deposit bag. A deposit slip, upon which he had written the date, the amount of the deposit, and his signature, was wrapped around the money and secured with a rubber band.

A brown car pulled up beside him, and a man jumped out of the car and demanded the bag. When Skidmore asked the man what he was talking about, the man struck him on the side of the face with a hand gun. The assailant then grabbed the bag and escaped in the car, which was driven by an accomplice. Skidmore obtained the license plate number of the car and then phoned the police. The only description he was able to give, however, was that the man who attacked him was black, about 180 pounds, five feet eleven inches tall, and wearing a dark leather jacket.

Joseph Reynolds testified at trial that he noticed a bank deposit bag in the street in front of his home between "4:30 and 5:00 P.M." He picked up the bag and realized that it had been cut. He did not look in the bag, but placed it on the curb. Reynolds went inside to phone the bank and then waited for the police to arrive. According to Reynolds,

the police arrived within half an hour, "before 5:00 P.M.," after he called the bank. When police officer R.A. Terranova arrived, Reynolds met the officer. Although Reynolds did not know if anyone had moved the bag, when the police picked it up, the bag was on the curb in "the position that [Reynolds] put it." When officer Terranova found the bag on the curb where Reynolds had left it, the officer noticed the deposit slip about twelve to sixteen inches from where the bag was located.

The slip was apparently folded or crumpled up when found because the police officer testified that he carefully unfolded it when he returned to the victim for identification. The laboratory technician who examined it testified that it was wrinkled when she received it. The deposit slip was composed of three equal sized pieces of paper. A white "original," a pink copy, and a yellow copy. Although the record is not clear whether the pink or yellow copy was the third page, the clarity of the "carbon" impression on the pink copy suggests that the pink copy was between the original and the yellow copy when the slip was signed by Skidmore. The palm print on the yellow copy was described as being on the back of the deposit slip.

Skidmore testified that from the time he was robbed until the police returned to him with the deposit slip was "thirty to forty-five minutes." There were various estimates of the time at which certain events occurred, but construing the evidence in the light most favorable to the Commonwealth, thirty to forty-five minutes elapsed between the time of the robbery and the time the police officer returned the stolen deposit slip to Skidmore.

Laboratory fingerprint analysis of the deposit slip revealed defendant's right thumb print and left thumb print on the front of the white "original," and a partial left palm print on the "back of the (yellow) deposit slip."

The defendant had not been employed by the Hardee's restaurant, and he had no access to the area of the restaurant where deposit slips were located. The defendant presented no evidence at trial.

■ On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth,* 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

The Commonwealth must prove each and every element beyond a reasonable doubt. In this case, the Commonwealth was required to prove that Parrish was the person who took by force or threat, with the intent to steal, the money from the Hardee's manager. *See Pritchard v. Commonwealth*, 225 Va. 559, 561, 303 S.E.2d 911, 912 (1983). There is no question that the robbery took place. The question is whether Parrish was the perpetrator of the crime. Unless the evidence excludes every reasonable hypothesis but that the prints found their way onto the deposit slip because Parrish was the robber, the evidence was insufficient.

Parrish admits that the evidence excludes the possibility that his prints found their way onto the deposit slip while it was in the possession of Hardee's before the robbery. Skidmore testified that the deposit slips, each with a Hardee's name printed on it, were received at Hardee's in a sealed package from the manufacturer. Defense counsel suggests as a hypotheses that the prints might have found their way onto the deposit slip in the print manufacturing process. However, "the hypotheses which must be reasonably excluded are those which flow from the evidence itself, and nôt from the imagination of defendant's counsel." *Turner v. Commonwealth*, 218 Va. 141, 148, 235 S.E.2d 357, 361 (1977). We hold the evidence excluded any reasonable possibility that Parrish touched the deposit slip before the robbery. Therefore, the reasonable inference from the evidence was that Parrish possessed the deposit slip at some point during or shortly after the robbery.

Parrish also contends that the evidence does not exclude the possibility that he possessed the bag after the robbery either before or after Joseph Reynolds found it and called the bank. Parrish suggests as a hypothesis that he may have come along, before or after Reynolds, and, like Reynolds, examined the bag and the deposit slip and discarded it.

However, there are circumstances surrounding the case that would allow the jury to infer that the prints would not have found their way onto the deposit slip unless Parrish was the robber. First, the time interval between the robbery and the bag being returned to the victim was thirty to forty-five minutes. In that time, the bag and slip were with the thief, Reynolds and the police officer. Thus, there was little opportunity for Parrish to touch the slip unless he was the thief. Secondly, defendant's right thumb print was found on the front upper right corner of the deposit slip. His left thumb print was on the upper

left corner and his partial left palm print was also on the back of the deposit slip. The thumb prints may have been consistent with the finder picking up the deposit slip and looking at it. However, the palm print can only be explained if pressure from the palm were applied to the back of the deposit slip with enough force to leave the print. In order to do this, the jury could infer that some solid object had to be behind the slip where the palm was placed. The jury could have inferred that when Parrish held the slip, the deposit slip was still wrapped around the roll of money, as it was when stolen from Skidmore.

This case is analogous to the facts in *Avent v. Commonwealth,* 209 Va. 474, 164 S.E.2d 655 (1968), where the Supreme Court held that the Commonwealth was not required to negate every possibility that a defendant was innocently present at the scene of the crime when his fingerprints were found in an area to which he had no legitimate access. Nor is the Commonwealth required to prove affirmatively and conclusively to a certainty that the print could not have been made other than at the time the crime was committed. *Turner v. Commonwealth,* 218 Va. 141, 148, 235 S.E.2d 357, 361 (1977). "[T]he fingerprint evidence need be joined only with evidence of other circumstances tending to reasonably exclude the hypothesis that the print was made at some other time than during commission of the crime." *Id.* Here, the unexplained circumstances of the placement of the palm print on the bank deposit slip and the two thumb prints on the front within such a short time after robbery were sufficient for a rational finder of fact to conclude beyond a reasonable doubt that Parrish was the robber. *See Lansdown v. Commonwealth,* 226 Va. 204, 215, 308 S.E.2d 106, 113 (1983) (upholding a jury instruction that stated that possession of recently stolen property, if unexplained or falsely denied, is a circumstance which may be considered for a robbery conviction), *cert. denied,* 465 U.S. 1104 (1984).

Accordingly, the judgment appealed from is affirmed.

*Affirmed.*

Baker, J., concurred.

Bray, J., dissenting.

I do not concur with the majority that the evidence "excluded any reasonable hypothesis" of defendant's innocence and, respectfully, dissent.

It is well established that circumstantial evidence "'must always be scanned with great caution . . . [and will] justify a verdict of guilty . . . [only if it] produce[s] upon a fair and unprejudiced mind a moral conviction of . . . guilt . . . beyond all reasonable doubt.'" *Chrisman v. Commonwealth,* 3 Va. App. 371, 377, 349 S.E.2d 899, 903 (1986) (quoting *Dean v. Commonwealth,* 73 Va. (32 Gratt.) 912, 914 (1879)). The facts "'must be consistent with guilt and inconsistent with innocence and . . . exclude every reasonable hypothesis of innocence.'" *Varker v. Commonwealth,* 14 Va. App. 445, 447, 417 S.E.2d 7, 8 (1992) (quoting *Boothe v. Commonwealth,* 4 Va. App. 484, 492, 358 S.E.2d 740, 745 (1987)). If the evidence is "susceptible to two different interpretations," the one which is "'more favorable to the accused should be adopted unless it is untenable under all the facts and circumstances of the case.'" *Varker,* 14 Va. App. at 447, 417 S.E.2d at 8 (quoting *Williams v. Commonwealth,* 193 Va. 764, 772, 71 S.E.2d 73, 77 (1952)).

Here, the majority relies upon the presence of defendant's finger and palm prints on the deposit slip as "sufficient evidence" to support the conviction. However, "fingerprint evidence, standing alone, is *insufficient* identification of criminal agency." *Henderson v. Commonwealth,* 215 Va. 811, 813, 213 S.E.2d 782, 784 (1975) (emphasis added). Such evidence "'must be coupled with . . . other circumstances tending to reasonably exclude the hypothesis'" of innocence. *Avent v. Commonwealth,* 209 Va. 474, 479, 164 S.E.2d 655, 659 (1968) (quoting *McNeil v. State,* 227 Md. 298, 300, 176 A.2d 338, 339 (1961)); *see Turner v. Commonwealth,* 218 Va. 141, 148, 235 S.E.2d 357, 361 (1977).

The bank deposit bag was observed during the "late afternoon," "laying [sic] in the street," by Commonwealth witness Reynolds as he was "painting [his] house." He "picked it up," "put it next to the curb," "just left [it] on the side of the street," and notified the bank. "Within a half hour," the police arrived. Reynolds directed them to the bag and Officer Terranova noticed the deposit slip nearby, also in the public street. The fingerprints were discovered by an "examiner," who testified that only "touches" were necessary to leave the impressions. When asked if "touching with the palm would have to be more than a casual brushing," the expert was unable to express an opinion.

Clearly, this evidence proves only that defendant once held the deposit slip in his hand. The time and circumstances of that possession are unknown and support no inference that defendant was a criminal

agent involved in the robbery. *See Lansdown v. Commonwealth,* 226 Va. 204, 215, 308 S.E.2d 106, 113 (1983), *cert. denied,* 465 U.S. 1104 (1984); *Varker,* 14 Va. App. at 447, 417 S.E.2d at 9; *Nelson v. Commonwealth,* 12 Va. App. 268, 271, 403 S.E.2d 384, 386 (1991). One need not look to the "imagination of . . . counsel," *Turner,* 218 Va. at 148, 235 S.E.2d at 361, to find abundant evidence in this record which "supports a credible exculpatory explanation of the existence of fingerprints." *Henderson,* 215 Va. at 813, 213 S.E.2d at 784. The apparently innocent discovery and handling of the bank bag by Reynolds makes the obvious point.

According the evidence in this record the appropriate consideration and weight, I find it insufficient as a matter of law to establish defendant's guilt beyond a reasonable doubt and would reverse the conviction.